KATHERINE ZOMBRIC'S CASE.

Suffolk.    March 4, 1935. — March 27, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Workmen's Compensation Act*, Physician's services.

Where it appeared, in proceedings under the workmen's compensation act, that the employee suffered a severe injury requiring immediate attention; that he was taken to the nearest hospital, at which one of the doctors on its staff, called by some one connected with it, gave the employee emergency treatment; that on the same day the employee's father requested the doctor to continue in charge of the case; that the employee thereafter accepted treatment from the doctor for a substantial period of time; that the insurer paid the hospital bills; and that there was no contract for such services between the doctor and the insurer, findings were warranted that, within the

meaning of G. L. (Ter. Ed.) c. 152, § 30, the doctor was selected by the employee as his doctor and that there was justifiable cause for the doctor's continuing to treat the employee after he had begun treatment in an emergency; and, such services having been found to be adequate and reasonable, it was proper to enter a decree ordering the insurer to pay the doctor a reasonable sum therefor.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding a physician $826 for services rendered to the employee from October 7, 1930, through October, 1931.

Material evidence and findings by the board are stated in the opinion. By order of *Whiting*, J., a decree in accordance with the board's decision was entered. The insurer appealed.

*E. Field*, (*R. H. Field* with him,) for the insurer.

*W. C. Crossley*, for the claimant.

PIERCE, J. This is an appeal by the insurer from a decree entered in the Superior Court after certification from the Industrial Accident Board, by which payment for services of a physician, George W. Blood, was ordered. G. L. (Ter. Ed.) c. 152, § 30, reads: "During the first two weeks after the injury, and, if the employee is not immediately incapacitated thereby from earning full wages, then from the time of such incapacity, and in unusual cases, or cases requiring specialized or surgical treatment, in the discretion of the department, for a longer period, the insurer shall furnish adequate and reasonable medical and hospital services, and medicines if needed, together with the expenses necessarily incidental to such services. The employee may select a physician other than the one provided by the insurer; and in case he shall be treated by a physician of his own selection, or where, in case of emergency or for other justifiable cause, a physician other than the one provided by the insurer is called in to treat the injured employee, the reasonable cost of his services shall be paid by the insurer, subject to the approval of the department. Such approval shall be granted only if the department finds that the employee was so treated by such physician

or that there was such emergency or justifiable cause, and in all cases that the services were adequate and reasonable and the charges reasonable."

The reported evidence which, in the main, is not disputed by the appellant insurance company, discloses the following facts: One Katherine Zombric on October 7, 1930, was twenty-two years of age and was then employed as an operative in the mill of the United Rayon Company of Fall River. On that day, shortly after she began work in the morning, her hair was "caught in a revolving shaft, and her scalp and back of neck were torn off." She was immediately taken to St. Anne's Hospital. This hospital was incorporated under the provisions of R. L. c. 125 "for the purpose of . . . maintaining . . . homes or hospitals for the care of persons who are ill, disabled, invalid or convalescent, and furnishing them with medical and surgical treatment, support and nursing, and of maintaining schools for the training of nurses." Shortly after the arrival of the employee at the hospital some one called Dr. George W. Blood "to go down to the hospital on an emergency as quickly as possible." Dr. Blood was a member of the staff of the hospital but was not "on service" that week. However, he was subject to call from the hospital for the treatment of emergency cases.

Dr. Blood testified that it was one of the conditions under which he took service at the hospital that he would be subject to calls by the hospital in the event of an emergency arising; that the case of the employee was an emergency case and that he was called by the hospital and not by the employee nor by any member of her family; that after he treated the employee at the hospital her father came to see him at noon time and he had some conversation with him; that he told the father all about the case, how long she would be in the hospital, and that he was perfectly free to get any doctor he wished; that the father's first reaction was that he wanted a specialist; that Dr. Blood said that he specialized in surgery and the father told him to keep on and do the best he could with the case. The evidence is not disputed by the insurer that the skin was

torn over the right side and back of the neck, nor that the severity of the injury necessitated several skin graftings and manipulations of the neck muscles at different intervals, nor that the entire recovery of the patient required several months' treatment. It is not disputed that the insurer has paid the compensation due the employee under the statute, as well as the bills for her hospital treatment from October 7, 1930, until November 7, 1931, when she was discharged from the hospital.

On October 14, 1930, Dr. Blood wrote the insurer, Arrow Mutual Liability Insurance Company, informing that company of the fact that Katherine Zombric had been injured at the United Rayon Mills on October 7, 1930. This letter stated the cause and the result of the injury and concluded: "This is a very serious and unusual accident and will probably require several months of treatment and possibly several skin grafting operations. I would appreciate a note from you authorizing such treatment." The insurance company on October 20, 1930, acknowledged receipt of Dr. Blood's letter in these words: "The accident to the above employee was an extremely unfortunate affair, and we are eager to do everything to make possible her recovery. We knew that Miss Zombric had been sent to the surgical service of St. Anne's Hospital, but had no knowledge as to what member of the hospital staff was in charge of this case. We are pleased to learn that the girl is being treated on your service, and we will be happy to cooperate with you in any way. Several days after the accident the Mother Superior of the hospital called on Mr. Joseph A. Parks at the State House; and at that time we assured Mr. Parks that we would accept liability because of the hospital care. Dr. J. Newton Shirley of this office is usually in Fall River each week, and I am asking Dr. Shirley to keep in touch with you, and to give you any assistance you may need." The record does not disclose that the insurer furnished any medical attention to the employee following its letter of October 20, 1930, nor that any physician other than Dr. Blood attended the employee. There is no direct evidence that the employee herself selected Dr. Blood as her physi-

cian nor that she authorized any other person to do so on her behalf, but the employee's acceptance of the medical services of Dr. Blood for many continuous months clearly warranted the inference, if it did not require a finding, that the employee ratified and adopted the action of her father in this regard.

It is not contended or found that there was in fact any contract between the insurer and Dr. Blood to pay for the services rendered. The contention of the claimant and the decision of the board are predicated upon the finding or ruling that there existed justifiable cause under G. L. (Ter. Ed.) c. 152, § 30, for Dr. Blood continuing his treatment of the employee as a private patient. The insurer seasonably filed requests for findings of fact and rulings of law. These requests are numbered 1–20, inclusive. The reviewing board gave requests numbered 1, 2, 3, 4, 7, 8, 9, 10, 12, 14 and 18 but refused the others. The board in this connection specifically found the following facts under said § 30: On October 7, 1930, at about 7 A.M., Katherine Zombric, a girl twenty-two years of age and single, sustained a very serious scalp injury which arose out of and during the course of her employment when her hair caught in a revolving shaft. Necessity required that she be sent to the nearest hospital for specialized and surgical treatment. The nearest hospital was the St. Anne's Hospital. Dr. George W. Blood was a member of the staff at the time and had been for a good many years, but he was not on service or duty during the period within which this accident occurred. On account of the exigency, Dr. Blood was called by some one connected with the hospital and responded, rendering emergency service. Upon the same day, the employee, through her father, selected Dr. Blood as her physician. Beginning October 20, 1930, the insurance company furnished no other treatment, and after conferring with the insurance company and receiving a letter from it, Dr. J. Newton Shirley, employed by the Arrow Mutual Liability Insurance Company, consulted with Dr. Blood each week while the employee was under his care.

The board further found that in the circumstances dis-

closed by the evidence — that Dr. Blood came in on the case in the emergency, and was asked to continue on the case by the employee's father, together with his correspondence, talk and contact with the insurer or its representative, — there existed justifiable cause under § 30 for Dr. Blood continuing his treatment of the employee as a private patient; that the treatment rendered was adequate and reasonable; and that a reasonable fee for the services of the physician is $826.

The insurer contends that there was no evidence to support the finding that "upon the same day, the employee, through her father, selected Dr. Blood as her physician." The contention is met by the inference, as above stated, that the action of the father was ratified by the conduct of the employee. The insurer further contends that there is no evidence to support the finding that "beginning October 20, 1930, the insurance company furnished no other treatment, and after conferring with the insurance company and receiving a letter from them, Dr. J. Newton Shirley, employed by the Arrow Mutual Liability Insurance Company, consulted with Dr. Blood each week while the employee was under his care." This contention is based on the position that "The question here involved is whether a physician on the staff of such a general public hospital is entitled to compensation from the insurer for his services to a patient in such hospital in the absence of any contract therefor with the insurer." The insurer further contends that the following paragraph in the decision of the Industrial Accident Board, that "The board, under the circumstances disclosed by the evidence — that Dr. Blood came in on the case in the emergency, was asked to continue on the case by the employee's father, together with his correspondence, talk and contact with the insurer or its representative, — find that there existed justifiable cause under § 30 for Dr. Blood continuing his treatment of the employee as a private patient," was unwarranted in fact and in law. This contention rests upon the fact that the employee was sent to the nearest general public hospital for emergency treatment, which was rendered by a physician on the staff

of the hospital called by the hospital authorities; that there is no evidence that the treatment began as that of a "private patient"; that the treatment continued in the same hospital by the same staff surgeon; and that the hospital bills were paid by the insurer. As contended, the treatment did not begin as that of a "private patient," but it was continued as such following the employment of Dr. Blood at noon on the day of the accident. The insurer relies on *Allen's Case*, 265 Mass. 490. That case is distinguishable in its facts from the instant case in two respects, (1) the employee did not select the physician, and (2) there was no emergency or other justifiable cause which gave a right of recovery to the physician for services rendered. In the case at bar there was both an emergency and a selection of a physician after the employee had recovered consciousness, the exact moment of such selection being immaterial.

*Decree affirmed.*